

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN

AUSTIN 11, TEXAS

J███████████████
ATTORNEY GENERAL

Hon. George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-820
Re: Legality of changing admission taxes
under Art. 7047a (19), V.C.S., for a
show giving an outdoor aeronautical
demonstration without any racing.

This is in answer to your letter in which you ask whether or not admission taxes are due on the "National Air Show" sponsored by the Fort Worth Junior Chamber of Commerce under the provisions of House Bill No. 8 (Sec. 6, Art. III thereof), Forty-fourth Legislature, third called session, 1936, codified as Article 7047a(19), Vernon's Annotated Revised Civil Statutes of Texas. The material facts that you gave us are as follows:

"In connection with the Air Show, an admission price of 50¢ for adults and 25¢ for children was charged. . . .

"The National Air Show is owned and operated by individuals in Atlanta, Georgia, and it travels from place to place where the show is to be given. The show consists of maneuvers and exhibitions in flying of airplanes and the Junior Chamber of Commerce obtained a small portion of the proceeds of the said show to be distributed to the Goodfellow Fund and the Santa Pal Fund for their efforts in sponsoring the show. . . .

". . . There was no element of competition involved in the air show whatsoever. It was merely a demonstration of the handling of airplanes and aeronautical devices for the purpose of instructing and educating the public as to the use and manipulation of airplanes, primarily. The air show is primarily in the nature of a picture show, opera, play or anything of that nature, except that rather than use film or have the show confined within a building, the air show of course is outside, because of the necessity of using a large area. . . ."

Article 7047a (19), which is the only statute we are concerned with in this discussion, reads as follows:

"Every person, firm, association of persons, or coporation owning or operating any place of amusement which charges a price or fee for admission, including exhibitions in theaters, motion picture theaters, opera halls, and including horse racing, dog racing, motor-cycle racing, automobile racing, and like contests and exhibitions, and including dance halls, night clubs, skating rinks, and any and all other places of amusement not prohibited by

law, shall file with the State Comptroller a quarterly report on the 25th day of January, April, July, and October for the quarter ending on the last day of the preceding month; said report shall show the gross amount received and the price or fee for admission; provided, however, no tax shall be levied under this Act on any admission collected for dances, moving pictures, operas, plays, and musical entertainments, all the proceeds of which inure exclusively to the benefit of State, religious, educational, or charitable institutions, societies, or organizations, -- if no part of the net earnings thereof inure to the benefit of any private stockholder or individual; and provided further, that theaters, motion picture theaters, operas, plays, and other like amusements where the admission charge is less than fifty-one (51) cents per person, and where no tax is due hereunder, shall be relieved from the filing of a report and the payment of a tax levied under the provisions of this Section. Said person, firm, association of persons, or corporations, at the time of making such report shall pay to the Treasurer of this State a tax in rates and amounts as follows:

"1. A tax of one cent on each ten (10) cents or each fractional part thereof paid as admission to theaters, motion picture theaters, operas, plays, and like amusements where the admission charged is in excess of fifty-one (51) cents per person.

"2. A tax of one cent on each ten (10) cents or each fractional part thereof paid as admission to horse racing, dog racing, motor-cycle racing, automobile racing, and like mechanical or animal contests and exhibitions. This Subsection shall be effective on December 1, 1938.

"3. A tax of one cent on each ten (10) cents or a fractional part thereof paid as admission to dance halls, night clubs, skating rinks, and any and all other like places of amusements, contests, and exhibitions where the admission charge is in excess of fifty-one (51) cents.

"4. On the amounts paid for admission by season ticket, subscription, or lease for admission to any place of amusement, a tax equivalent to ten (10) per centum of the amount paid therefor, provided a single admission to the place of amusement would be subject to taxation under the foregoing provisions.

"5. On all passes or complimentary tickets to any place of amusement where a tax on admission is levied under this Section of this Act a tax equivalent to one cent on each ten (10) cents or each fractinal part thereof charged as admission where the admission charge to such place of amusement is in excess of fifty-one (51) cents per person.

"6. All the revenues derived under and by virtue of this Section shall be credited by the Treasurer, one-fourth to the Available School Fund, and three-fourths to the Texas Old Age Assistance Fund."

As the admission charge in the case under consideration was less than fifty-one (51) cents, it is clear that subsections 1, 3 or 3 of said Article 7047a(19) do not apply. We must consider whether or not sub-section 2 applies to the facts in this case.

It will be noticed that sub-section 2 places a tax on admissions to "horse racing, dog racing, motorcycle racing, automobile racing, and like mechanical or animal contests and exhibitions." Everything that is mentioned specifically is a type or kind of racing. Racing is clearly a contest or exhibition. The word "like" is a word of modification or limitation as used here. When the phrase "like mechaniol or animal contests of exhibitions" follows a list of specified contests and exhibitions that consist only of racing, it is our conclusion that the phrase means only contests and exhibitions of the same kind, towit, racing. This theory of reasoning is known as ejusdem generis, which is stated in 39 Tex. Jur. 292, as follows:

"The doctrine of ejusdem generis (of the same kind) imports that general words following an enumeration of particular or specific things will be confined to things of the same kind. In brief, the general words so used are not to be construed in their widest sense, but ar to be held as applying only to persons or things of the same kind and class as those enumerated. . . ."

Under the facts given us the "National Air Show," which you ask about, was not a race and included no racing. Therefore, it is not covered by said subsection 2.

There are no Texas appellate court cases on this particular question, and we have been unable to find any out-of-state court decisions construing a statute exactly like this; but we have found some appellate court cases that have construed statutes similar to this one. In the case of Ex parte Roquemore, 80 Tex. Crim. R. 282, 131 S.W. 1101, 32 L. R. A. (N.S.) 1186, the Court of Criminal Appeals of Texas used the same kind of reasoning we have used here in holding that a baseball game did not come within the phrase "such other amusements" in Article 199 of the Penal Code of 1895, and in arriving at that conclusion the court said:

"To determine this correctly, recourse must be had to article 199 of the Penal Code of 1895, on which reliance is had by the state to hold relator. This article is as follows: 'Any merchant, grocer, or dealer in wares or merchandise, or trader in any business whatsoever, or the proprietor of any place of public amusement, or the agent or employe of any such person, who shall sell, barter or permit his place of businessor place of public amusement to be open for the purpose of traffic or public amusment on Sunday, shall be fined not less than twenty nor more than fifty dollars. The term 'place of public amusement' shall be construed to mean circuses, theaters, variety theaters and such other amusements as are exhibited and for which an admission fee is charged; and shall also include dances at disorderly houses, low dives and places of like character with or without fees for admission.' It will be noted that this article undertakes to name and designate the place of public amusment, and it is said that it shall be so construed as to mean circuses, theaters, variety theaters, and such other amusements as are exhibited and for which an admission fee is charged, and shall also include dances at disorderly houses, low dives, and places of like character with or wihout fees for admission. That baseball is not specifically named, of course, is clear.

What we are to understand by the general term "and such other amusements as are exhibited and for which an admission fee is charged?" Clearly we think amusements of a like or similar character. This seems to have been the construction given to a similar statute by many courts. . . .

"In the case of Ex parte Muckenfuss, 52 Tex. Cr. R. 467, 107 S.W. 1131, we had occasion to review and consider at length the rule of construction applicable to a statute such as this. We there said: 'It is a familiar rule that, where general words follow , particular and specific words, the former must be confined to things of the same kind. . . . The doctrine itself is thus well expressed in Lewis' Sutherland, Statutory Construction: 'When there are general words following particular and specific words, the former must be confined to things of the same kind. This is known as the rule or doctrine of ejusdem generis.' Some judicial statements of this doctrine are here given. 'When general words follow an enumeration of particular things, such words must be held to include only such matters or objects as are of the same kind as those specifically enumerated.' 'The rule is that where words of a particular description in a statute are followed by general words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general words are to be construed as applicable to persons or things, or cases of like kind to those designated by the particular words.' 'It is a principle of statutory construction everywhere recognized and acted upon, not only with respect to penal statutes, but to those affecting only civil rights and duties, that where words particularly designating specific acts or things are followed by and associated with words of general import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to have been used, not in the board sense which they might bear, if standing alone, but as related to the words of more definite and particular meaning with which they are associated.' . . ."

The same type of reasoning was used by the Supreme Court of Minnesota in the case of State v. Chamberlain, 112 Minn. 52, 127 N. W. 444, 21 Ann. Cas. 670, in which it said:

". . . That part of section 4981 necessary to set out here reads: 'All hunting, shotting, fishing, playing, horse racing, gaming and other public sports, exercises and shows.'

"Does the word 'shows' as used in section 4981 include a moving picture show, or similar entertainment, when conducted in a building where the only feature of publicity consists in the fact that the public is invited to attend and enter the building by means of an entrance opening on a public street? 'Hunting, shotting, fishing, playing, horse racing, and gaming undoubtedly refer to outdoor life. The words 'other public sports, exercise, and shows,' by reason of their association with what precedes them, refer to the same character of sports or exercises, viz., those conducted out of doors. This is the proper application of the rule ejusdem generis: General words, following an enumeration of particulars, are limited by reference to the preceding particular enumeration, and are to be construed as including only all

other like things. . . .

". . . We have reached the conclusion that the exhibition as conducted by appellant is not within the provisions of the statute. . . ."

Similar reasoning was used by the Supreme Court of Illinois in the case of City of Clinton v. Wilson, 257 Ill. 580, 101 N. E. 192, which see.

In the case under consideration, the contests and exhibitions specifically enumerated are all racing events, and under the rule of ejusdem generis we do not think that the words "like mechanical or animal contests and exhibitions" include or refer to an "air show," which consists of outdoor aeronautical demonstrations without racing of any kind.

Other cases that support our conclusion are State v. Prather, 79 Kan. 513, 100 Pac. 57, 21 L.R.A. 23, 131 Am. St. Rep. 339; Ex parte Neet, 157 Mo. 527, 57 S.W. 1025, 80 Am. St. Rep. 638; and Crute v. State, 21 Ala. App. 530, 109 Sou. 617.

We do not believe our conclusion is in conflict with the cases of Ex parte Lingerfelter, 64 Tex. Crim. R. 30, 142 S.W. 555; Zuocaro v. State. 82 Tex. Crim. R. 1, 197 S. W. 982; and Hegman v. State, 88 Tex. Crim. R. 548, 227 S.W. 954; because those cases only held that a moving picture show was the same kind and character of amusement as a theater and was included within the phrase "theaters and such other amusements."

Our answer to your question is that under the facts submitted to us for consideration, there are not admission taxes due on the "National Air Show" sponsored by the Fort Worth Junior Chamber of Commerce under the terms of Article 7047a (19).

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Cecil C. Rotsch

Cecil C. Rotsch
Assistant

CCR-MR:egw

APPROVED AUG 3, 1939
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee
By R W F
Chairman

(Note: For a prior opinion, see Vol. 380, p. 272 of letters of the Attorney General which relates to Fat Stock Shows)